J-S64017-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
JOHN SUCOLA : No. 428 WDA 2019

Appeal from the Order Entered March 18, 2019
In the Court of Common Pleas of Butler County Criminal Division at
No(s): CP-10-CR-0001153-2017

BEFORE: BOWES, J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.: FILED APRIL 15, 2020

The Commonwealth of Pennsylvania appeals from the order, entered in the Court of Common Pleas, denying its pre-trial motion to introduce evidence pursuant to Pa.R.E. 404(b). Upon careful review, we affirm.

The Commonwealth alleges, in the late evening on May 20, 2017, or the early morning of May 21, 2017, John Sucola went to the home of his estranged wife, Rachel Sucola, and, after being refused permission to enter, shattered the home's rear door and threw Rachel to the floor. Officer Randall Bauer arrested Sucola shortly thereafter. Sucola was subsequently charged with

_____

[*] Retired Senior Judge assigned to the Superior Court.

simple assault,[1] harassment,[2] possession of drug paraphernalia,[3] and possession of marijuana.[4]

On May 28, 2017, Rachel obtained an emergency ex parte protection from abuse (PFA) order requiring Sucola to refrain from contacting Rachel or their child. In support of the emergency PFA petition, Rachel provided the court with a hand-written statement describing Sucola's behavior subsequent to his arrest. Specifically, Rachel alleged Sucola lingered outside her home and at her place of business for three consecutive days. Subsequently, Rachel petitioned for a temporary PFA order, which the court granted on June 6, 2017. The court issued a final PFA order on July 18, 2017, effective for three years. During indirect criminal contempt (ICC) proceedings on September 27, 2018, the court found Sucola in violation of the final PFA order for screaming at Rachel while exchanging custody of their fourteen-year-old son on August 23, 2018.[5]

Before Sucola's trial was scheduled to begin, the Commonwealth filed a motion in limine to introduce into evidence the PFA orders, Rachel's hand-written statement, and evidence from the ICC proceedings. See Motion,

_____

[1] 18 Pa.C.S.A. § 2701(a)(1).

[2] 18 Pa.C.S.A. § 2709(a)(1).

[3] 35 P.S. § 780-113(a)(32).

[4] 35 P.S. § 780-113(a)(31).

[5] The court sentenced Sucola to ten days to six months' incarceration.

3/11/19, at 2 ("[T]he Commonwealth seeks to introduce evidence of [Sucola's] prior bad acts including PFA's [sic] and criminal contempt to show intent and course of conduct."). On March 18, 2019, the court heard argument on the motion, during which the Commonwealth argued the evidence was admissible under Rule 404(b) for the non-propensity purpose of showing Sucola's "motive, malice or intent and . . . the continual nature of abuse." N.T. Hearing, 3/18/19, at 2. After determining the Commonwealth failed to establish a connection between the proffered evidence to the crimes being prosecuted, the court denied the Commonwealth's motion. See id. ("We are going to decide this case based on what [Sucola] is accused of doing in May.").

On March 22, 2019, the Commonwealth timely filed a notice of appeal and certified the court's order substantially handicapped the prosecution pursuant to Pa.R.A.P. 311(d). Both the Commonwealth and the court complied with Pa.R.A.P. 1925. The Commonwealth raises the following question for our review:

> Whether a certified PFA [order] as against the defendant in protection of the victim in the underlying offense; [sic] and, the circumstances under which it was issued, are admissible evidence of the history and natural development of the facts of the case, pursuant to Pennsylvania case law and [Rule 404(b)], where the incident giving rise to the PFA [order] occurred after the offense charged?

Brief of Appellant, at 5. Specifically, the Commonwealth "seeks to admit evidence in this matter pursuant to the res gestae exception[6]" under Rule 404. Id. at 10.

Our standard of review regarding the denial of a motion in limine is well-settled:

> When ruling on a trial court's decision to grant or deny a motion in limine, we apply an evidentiary abuse of discretion standard of review. The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

_____

[6] We note with disapproval the sloppiness with which the Commonwealth has litigated Sucola's case to this point. As discussed further infra, while arguing before the trial court, the assistant district attorney seemed unfamiliar with even the most basic facts underpinning her motion. See N.T. Hearing, 3/18/19, at 3 (seeking admission of material from ICC hearing and underlying PFA orders for non-propensity purpose of showing course of conduct, but admitting she lacked knowledge of facts underpinning both PFA and ICC proceedings). Moreover, though we do not find the Commonwealth's argument waived in its entirety, we find it concerning that the Commonwealth failed to articulate clearly an argument advocating for the admission of evidence at issue under the res gestae exception at any point before filing its appellate brief. See id. at 2 (omitting mention of res gestae; arguing for admission on grounds that evidence would show "continual nature of abuse"); see also Motion, 3/11/19, at 2 (seeking to introduce "prior bad acts including PFA's [sic] and criminal contempt to show intent and course of conduct"). We, however, find the Commonwealth waived its initial arguments regarding motive, malice or intent and evaluate the proffered evidence solely to determine whether it furthers the non-propensity purpose of establishing the history of the case under the res gestae exception. See Commonwealth v. Sanchez, 36 A.3d 24, 72 (Pa. 2011) (precluding review of arguments abandoned on appeal).

Commonwealth v. Ivy, 146 A.3d 241, 251 (Pa. Super. 2016) (citation omitted).

The trial court denied the Commonwealth's motion in limine under Rule 404, which provides, in relevant part, as follows:

Rule 404. Character Evidence; Crimes or Other Acts.

\* \* \*

(b) Crimes, Wrongs or Other Acts.

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)–(2).

Our Supreme Court has consistently recognized the propriety of admitting evidence of bad acts, distinct from the charged crimes, "where it is part of the history or natural development of the case, i.e., the res gestae exception." Commonwealth v. Brown, 52 A.3d 320, 326 (Pa. Super. 2012). In other words, the exception applies to bad acts "which are so clearly and inextricably mixed up with the history of the guilty act itself as to form part of one chain of relevant circumstances, and so could not be excluded on the presentation of the case before the jury without the evidence being rendered thereby unintelligible." Commonwealth v. Knoble, 188 A.3d 1199, 1205

(Pa. Super. 2018) (citation omitted). "Where the res gestae exception is applicable, the trial court must balance the probative value of such evidence against its prejudicial impact." Brown, supra at 326; see also Commonwealth v. Weakley, 972 A.2d 1182, 1191 (Pa. Super. 2009) (balancing occurs after non-propensity purpose established under Rule 404(b)).

The trial court denied the Commonwealth's motion on the grounds that it failed to establish a permissible purpose for the proffered evidence.[7] See Pa.R.A.P. 1925(a) Opinion, 5/21/19, at 4–5. We agree.

When the trial court asked the Commonwealth whether it sought to introduce "a PFA [order] . . . based on the same facts as [the] trial," the assistant district attorney responded, "I don't know if it's based on the same facts." N.T. Hearing, 3/18/19, at 4. When the court asked what Sucola did to violate the PFA order, the assistant district attorney responded "obviously it would have been some violation of the PFA[ order,]" before saying "the indirect criminal contempt . . . has nothing to do with the charges that are here." Id. at 4–5. When asked why the proffered evidence was relevant to "the underlying allegations of the crime[,]" the Commonwealth replied with a

_____

[7] The court also found the prejudicial impact of the proffered evidence outweighed its probative value, and noted that the evidence could alternatively be excluded under Pa.R.E. 403. See Pa.R.A.P. 1925(a) Opinion, 5/21/19, at 4–5.

bald assertion that the conduct constituted "continual harassment[,]" rendering the evidence admissible. Id. at 6.

We find the Commonwealth's half-hearted argument failed to establish the relevance of these events to the history of the case, thereby precluding their admission under the res gestae exception. See Knoble, supra at 1205. The fact that the evidence concerns events which took place after the crimes for which Sucola stands accused, without an explanation of how Sucola's subsequent behavior is relevant to either the charged crimes or the prosecution of this case, fatally undermines any argument that this evidence is necessary to explain "the complete story or natural developments forming the history of the case." Crispell, supra at 937. Therefore, the res gestae exception to the general prohibition against evidence of other bad acts is inapplicable.[8] See Knoble, supra at 1205 (admitting evidence under res gestae exception requires "the case before the jury without the evidence [to have been] rendered thereby unintelligible.").

The Commonwealth, at length, argues the trial court committed an abuse of discretion by failing to find the proffered evidence admissible under the holding of either Commonwealth v. Drumheller, 808 A.2d 893 (Pa.

_____

[8] We, therefore, do not engage in the balancing test under Rule 404. See Weakley, supra at 1191 (requiring balancing test after permissible non-propensity purpose is identified.).

2002), or Commonwealth v. Ivy, 146 A.3d 241, 251 (Pa. Super. 2016). Brief of Appellant, at 12–20. Both cases are distinguishable.

In Drumheller, the Commonwealth sought to admit as evidence four PFA petitions, all of which had been granted on behalf of a wife against her husband, while prosecuting the husband for his wife's murder. Drumheller, supra at 897–98. These petitions contained descriptions of physical abuse and verbal threats, including threats against the victim's life, all of which formed a pattern of abuse leading up to the defendant killing his wife. Id. Our Supreme Court deemed these PFA orders admissible as part of "the chain or sequence of events that formed the history of the case" because they were relevant to the continual and escalating nature of [husband's] abuse of [wife.]" Id. at 905.

We find the Drumheller Court's ruling distinguishable because the PFA orders involved in that case, by virtue of having been granted before the crimes being tried, logically provided context critical to understanding the defendant's course of conduct leading up to the crime.[9] See id.; see Knoble,

_____

[9] The Commonwealth also cites Drumheller for the proposition that the timing of abuse is immaterial, stating "evidence of abuse is relevant, and the timeliness of its occurrence more properly affects the weight of the evidence rather than its admissibility." Brief of Appellant, at 16 (citing Drumheller, supra at 905). This is a mischaracterization of the law; the Drumheller Court referenced timing insofar as it evaluated whether the remoteness in time between two events impacted weight or admissibility. Drumheller, supra at 905. The instant situation, however, does not concern the distance in time between two events, but rather, hinges on how a preceding event

supra at 1205 (requiring evidence admitted under res gestae exception be "inextricably mixed up with the history of the guilty act itself as to form part of one chain of relevant circumstances [.]"); see also Robinson, supra at 497 (admitting evidence under res gestae exception on grounds that it was "intricately interwoven" and "provided the jury with a complete story[.]").

Ivy, supra, features a superficially similar scenario, albeit with important factual and legal differences. In Ivy, supra, the Commonwealth sought to admit evidence of a victim's PFA order against the defendant and his violation thereof—events which occurred after the conduct for which the defendant was being tried. Id. at 252. Critically, however, the Commonwealth established that the defendant violated the PFA order by engaging a third party to instruct the victim to either withdraw the charges for which he was being tried, refuse to appear at the preliminary hearing, or both. See id. at 252.

We found the evidence admissible both as res gestae and to prove consciousness of guilt, in spite of the fact that the charged conduct preceded the PFA order, because the Commonwealth established the evidence's role in providing context to subsequent events that were critical to contextualizing the case. See id. Namely, the defendant's PFA violation constituted an

_____

impacts a subsequent event, i.e. the crimes for which Sucola stands accused occurred before Rachel sought the initial ex parte PFA order, and the Commonwealth failed to establish the relevance of those subsequent events to the broader history of the case.

attempt to interfere with the case at trial, thereby properly rendering it part of "the history of the case." Id.; see also id. ("[I]t is necessary for the jury to know exactly what the PFA order stated and the nature of the [defendant's] violation" because violation evinced both defendant's "state of mind" and his "consciousness of . . . guilt."). Moreover, we found the trial court "wholly failed to substantiate" its finding that the prejudicial impact of the proffered evidence outweighed its probative value, and it was this failure that "compel[ed] our conclusion that the order should be reversed." Id. at 252.

Instantly, however, it was the Commonwealth who wholly failed to substantiate the importance of the proffered evidence. See N.T. Hearing, 3/18/19, at 4–7. Generally, we have admitted evidence of PFA orders that precede a crime of domestic violence as res gestae because preceding events naturally explain how "the incident at issue logically grew out of the prior set of circumstances[.]" Commonwealth v. Yocolano, 169 A.3d 47, 55 (Pa. Super. 2017). Such evidence, however, is not admitted because the res gestae exception only applies to prior bad acts, but rather, because earlier events generally constitute the history and development of a case and not vice versa. See id.; see Ivy, supra at 252. Ivy, supra simply illustrates that bad acts occurring after a charged crime can play a critical role in understanding the history of a case, albeit under circumstances where the Commonwealth explains how those subsequent acts played a role in how the case unfolded. See Ivy, supra at 252.

We, therefore, conclude the trial court did not misapply the law or abuse its discretion in denying the Commonwealth's motion for the introduction of evidence under Rule 404(b). See id. at 241; see also Knoble, supra at 1205.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/15/2020