J-S36018-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| HARRY ALBERT SMITH | : | |
| | : | |
| Appellant | : | No. 73 WDA 2020 |

Appeal from the Judgment of Sentence Entered November 22, 2019
In the Court of Common Pleas of Mercer County
Criminal Division at No(s):  CP-43-CR-0000287-2019

BEFORE:  OLSON, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                         FILED AUGUST 21, 2020

Appellant, Harry Albert Smith, appeals from the judgment of sentence entered in the Mercer County Court of Common Pleas, following his bench trial convictions for burglary, criminal trespass, and criminal mischief.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. Appellant befriended Carolyn Gayle Pierre ("Victim"), an elderly woman with medical issues, and he completed certain tasks around her house.  Victim lived alone at a residence in Farrell, Pennsylvania.  A breezeway with a sliding glass door connects Victim's house to her garage.  Victim always locked her side door, a wooden door with glass panels, which led from the breezeway to her

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3502(a)(1)(ii), 3503(a)(1)(ii), and 3304(a)(5), respectively.

house.

On January 20, 2019, Appellant went to Victim's house and shoveled snow in the driveway. At some point, Appellant stopped shoveling and entered Victim's house. The trial court summarized the ensuing events as follows:

> Upon leaving her bathroom, [Victim] discovered Appellant standing in her house attempting to conceal her purse, which contained her checkbook, under his jacket. [Victim] testified she did not invite Appellant over to her house or give Appellant permission to come into her house. Moreover, [Victim] testified the glass window panel in her side door nearest to the doorknob was broken and she had locked the side door prior to Appellant appearing uninvited in her home. [Victim] testified [that] after she confronted Appellant, Appellant threw the purse down and abruptly left her home.
>
> Appellant testified [that] he showed up to [Victim's] home to shovel her driveway because a snowstorm had occurred the day before and there were several inches of snow on the ground. While shoveling [Victim's] driveway, Appellant stated his hands got cold so he thought he would ask [Victim] for a pair of gloves. Appellant then said he opened a sliding breezeway door and proceeded to knock on the glass window panel in [Victim's] side door to get her attention.
>
> After two knocks, Appellant testified the glass window panel suddenly shattered and [Victim] invited him inside her home to get warm. Appellant then testified he left [Victim's] home and told her he would return to finish shoveling her driveway once he went to get gloves and something to eat.
>
> [Victim's] neighbor, Tracy Graham-Hughes, testified she saw Appellant pretending to shovel [Victim's] driveway the day of the incident. Concerned, Ms. Graham-Hughes called [Victim] and asked her, "[D]id you ask him to come over to do your driveway? She said, no." Ms. Graham-Hughes also testified [Victim] was afraid of Appellant. Ms. Graham-Hughes further testified she observed Appellant leaving [Victim's] property. Worried about Victim, Ms. Graham-

Hughes ran over to check up on [Victim].

Once Ms. Graham-Hughes arrived, she observed the glass window panel in [Victim's] side door nearest the doorknob was broken. Describing the extent of the broken window panel, Ms. Graham-Hughes testified: "[T]he part in the bottom left was broken out where you can reach in and unlock the door." Ms. Graham-Hughes further testified the broken window panel was within an arm's reach of the doorknob. Concluding her testimony, Ms. Graham-Hughes testified:

> And I said, "Oh my God," I said, "He was in here. He broke in your house." [Victim] said, "[Y]eah." [Victim] said she was in the bathroom and she didn't know he was in the house. And when she came out it startled her, because she said, "What are you doing here?" He was in her house.

Ms. Graham-Hughes also testified she observed Appellant in the past peeking into [Victim's] windows like [a] peeping tom. Ms. Graham-Hughes believed Appellant was attempting to see if [Victim] was in her home.

David Rhodes, another neighbor of [Victim], testified [he] arrived at [Victim's] house after his wife called 911 to report the burglary. Upon arriving at [Victim's] house, Mr. Rhodes testified he observed the glass window panel in [Victim's] side door nearest to the doorknob was broken and it looked as if someone broke the glass panel from the outside.

(Trial Court Opinion, filed March 11, 2020, at 2-5) (internal record citations omitted).

The Commonwealth charged Appellant with burglary, criminal trespass, criminal mischief, and theft by unlawful taking. On July 5, 2019, the Commonwealth filed notice of its intent to present evidence of prior bad acts, pursuant to Pa.R.E. 404(b). Specifically, the Commonwealth intended to introduce evidence that Appellant had befriended another elderly woman in

2017, gained access to her credit card, and made unauthorized withdrawals in the amount of $2,812.75. On July 12, 2019, Appellant filed a motion in limine, arguing the prior bad acts evidence was inadmissible. The court denied Appellant's motion in limine on August 19, 2019.

Appellant proceeded to a bench trial, and the court found Appellant guilty of burglary, criminal trespass, and criminal mischief. The court also acquitted Appellant of the theft charge. On November 22, 2019, the court sentenced Appellant to an aggregate term of thirty (30) to sixty (60) months' incarceration. Appellant timely filed post-sentence motions on December 2, 2019. Among other things, Appellant argued Victim's trial testimony "was of such poor and ambiguous quality that it lacked sufficient reliability and trustworthiness." (Post-Sentence Motions, filed 12/2/19, at 1). On December 11, 2019, the court denied Appellant's post-sentence motions.

Appellant timely filed a notice of appeal on January 10, 2020. That same day, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on January 27, 2020.

Appellant now raises two issues on appeal:

> Was not the evidence at trial insufficient as a matter of law to sustain the convictions of burglary and criminal trespass because the trial testimony of [Victim] was so vague, uncertain, contradictory and internally inconsistent that it was insufficiently reliable and trustworthy to establish a credible basis for a determination that the crimes of burglary and criminal trespass had been committed beyond a reasonable doubt?

- 4 -

> Did not reversible error occur when the trial court permitted the Commonwealth under [Pa.R.E.] 404(b)(2), to offer as evidence at trial Appellant's prior acts of befriending an elderly woman and then fraudulently obtaining unauthorized possession of the elderly woman's credit cards and obtaining cash from the unauthorized use of the credit cards?

(Appellant's Brief at 3).

In his first issue, Appellant argues the trial court "did not find [Victim] fully credible because of her age and medical issues," but it did credit Victim "on the limited claim that she saw ... Appellant attempting to hide [Victim's] purse under his jacket." (Id. at 19). Appellant insists the court erred in making this credibility determination, because Victim "testified at trial as to two inconsistent versions of what occurred when she came out of the bathroom." (Id.) Specifically, Appellant emphasizes Victim's cross-examination testimony that, at some point, Appellant actually asked to enter the house because he needed gloves.

Appellant further argues that Victim first mentioned Appellant's hiding of the purse after speaking with her neighbor, Ms. Graham-Hughes. Appellant contends Ms. Graham-Hughes does not like him, and "[a] reasonable inference is that Ms. Graham-Hughes or someone else may have influenced [Victim's] observations and recollections of events...." (Id. at 21). Under these circumstances, Appellant maintains Victim's testimony "was so vague, uncertain, [and] inconsistent ... that the Commonwealth's evidence from [Victim] lacked sufficient reliability...." (Id.) Appellant concludes the evidence

was insufficient to support his burglary and trespass convictions, and this Court must reverse. We disagree.

Preliminarily, the distinction between a claim challenging sufficiency of the evidence and a claim challenging the weight of the evidence is critical. Commonwealth v. Widmer, 560 Pa. 308, 318, 744 A.2d 745, 751 (2000).

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law.
>
> \* \* \*
>
> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion.
>
> \* \* \*
>
> [T]he role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

Id. at 319-20, 744 A.2d at 751-52 (internal citations, quotation marks, and footnote omitted). See also Commonwealth v. Wilson, 825 A.2d 710

- 6 -

(Pa.Super. 2003) (explaining sufficiency of evidence review does not include assessment of credibility, which is more properly characterized as challenge to weight of evidence).

Our standard of review for a challenge to the weight of the evidence is as follows:

> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.  As an appellate court, we cannot substitute our judgment for that of the finder of fact.  Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice.  Our appellate courts have repeatedly emphasized that one of the least assailable reasons for granting or denying a new trial is the [trial] court's conviction that the verdict was or was not against the weight of the evidence.

Commonwealth v. Rabold, 920 A.2d 857, 860 (Pa.Super. 2007), aff'd, 597 Pa. 344, 951 A.2d 329 (2008) (internal citations and quotation marks omitted).

> Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence.  Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

Commonwealth v. Champney, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), cert. denied, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004).

Instantly, Appellant's post-sentence motions claimed the Commonwealth presented insufficient evidence where the trial court

improperly credited Victim's testimony. Notwithstanding Appellant's attempt to raise a challenge to the sufficiency of the evidence, Appellant blurred the concepts of weight and sufficiency. See Widmer, supra. Essentially, Appellant contests Victim's credibility, which is a challenge to the weight of the evidence. See Wilson, supra.

Nevertheless, Appellant properly preserved the weight issue, and the trial court expressly addressed the claim as follows:

> The trial judge determined [Victim] was not fully credible due to her age and health issues. However, the trial judge found [Victim] was credible when she testified about her narration of the burglary. The trial judge found the testimony that Appellant appeared uninvited [in Victim's] home and was concealing [Victim's] purse under his jacket credible.[3]
>
> [3] The trial judge held: "[Victim] was very clear [regarding] the color of the purse, the cloth of the purse, I think, or at least the pattern of the purse. And she gave that same description to the police before. So she was very consistent the day of, and even today on that point."

(Trial Court Opinion at 15-16) (internal record citations omitted).

We see no reason to disturb the trial court's conclusions and emphasize that the finder of fact is exclusively responsible for weight determinations. See Rabold, supra. Here, the trial court credited Victim's testimony that Appellant attempted to conceal her "green and tapestry type" purse "under his jacket," and Appellant "threw it" on the floor when confronted. (N.T. Trial, 9/16/19, at 35, 36). The responding officer, Sergeant Monica Rose, confirmed that on the day of the incident, Victim claimed to see Appellant hide the purse

under his jacket and subsequently throw it to the floor. (See id. at 111). Additionally, Victim's testimony that Appellant entered her house without permission was supported by Ms. Graham-Hughes. (Id. at 87). Although Victim may have offered conflicting testimony about the precise sequence of events on the date of the burglary, the trial court was free to believe her testimony in part. See Rabold, supra. On this record, the trial court did not palpably abuse its discretion in ruling on the weight claim, and Appellant is not entitled to relief on this basis. See Champney, supra.

In his second issue, Appellant argues his "prior acts of unauthorized use of another's access device proves nothing about" whether he committed the offenses at issue. (Appellant's Brief at 26). Appellant acknowledges the prior bad acts evidence "may show a character trait of [Appellant] preying on elderly women to steal from them[.]" (Id. at 27). Appellant insists, however, the underlying facts of the two incidents are so different "that the evidence of the prior [bad] acts serve only to show Appellant's … propensity to commit nonviolent theft and has no probative value on the commission of the present charges…." (Id.) Appellant concludes the court improperly admitted the prior bad acts evidence, and he is entitled to a new trial on this basis. We disagree.

This Court's standard of review for issues regarding the admissibility of evidence is well settled:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court … [and] we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment,

but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. [I]f in reaching a conclusion the trial court [overrides] or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

Commonwealth v. Belknap, 105 A.3d 7, 9-10 (Pa.Super. 2014), appeal denied, 632 Pa. 667, 117 A.3d 294 (2015) (internal citations and quotation marks omitted).

"Relevance is the threshold for admissibility of evidence." Commonwealth v. Tyson, 119 A.3d 353, 358 (Pa.Super. 2015) (en banc), appeal denied, 633 Pa. 787, 128 A.3d 220 (2015).

Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact. Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Commonwealth v. Danzey, 210 A.3d 333, 342 (Pa.Super. 2019), appeal denied, ___ Pa. ___, 219 A.3d 597 (2019) (internal quotation marks omitted).

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, evidence of a crime, wrong, or another act "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan,

knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). "In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Id.

"Evidence of prior bad acts may [also] be admitted to establish the existence of a common scheme, [establish] an individual's motive, intent, or plan, or [identify] a criminal defendant as the perpetrator of the offense charged." Commonwealth v. Ivy, 146 A.3d 241, 253 (Pa.Super. 2016) (internal quotation marks omitted). "Two conditions must be satisfied to admit prior-crimes evidence to establish a common scheme: (1) the probative value of the evidence must outweigh its potential for prejudice against the defendant and (2) a comparison of the crimes must establish a logical connection between them." Id. (internal quotation marks omitted).

Instantly, the Commonwealth sought to introduce evidence of the circumstances surrounding Appellant's 2017 charges. The trial court noted the similarities between the prior bad acts and the current offenses as follows:

> Addressing the logical connection between the two acts, the manner in which the two acts were committed was identical. Appellant inserted himself into the lives of both elderly women in [an] attempt to swindle them out of their money. Appellant preys on elderly women.
>
> The prior bad act involved an elderly woman named Ms. Marenchin. Ms. Marenchin was Appellant's neighbor. Appellant befriended her and then once he gained her trust, he stole $2,813.00 through ATM cash withdrawals. Similarly, Appellant introduced himself to [Victim] and offered to help with tasks around her house. Instead of helping [Victim], Appellant was simply casing her home.

* * *

> Applying the remaining factors used to establish a logical connection, both bad acts involved no weapons but Appellant's sly tongue to gain his victim's trust. The purpose of both bad acts was to swindle elderly women out of their money. Even though the location of the crimes were different, the type of victims in both bad acts were identical. Both were elderly women. After an examination of all the factors, it is clear a logical connection exists between the two bad acts.

(Trial Court Opinion at 9-10).

Contrary to Appellant's assertions, the prior bad acts evidence established a common scheme that Appellant implemented on at least two occasions. Both the prior bad acts and current charges have a logical connection, arising from Appellant's attempts to befriend elderly women. See Ivy, supra. Moreover, we cannot say that the potential for prejudice outweighed the probative value of the prior bad acts evidence. Id. Therefore, the trial court did not abuse its discretion by admitting the evidence of prior bad acts. See Belknap, supra. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/2020

- 12 -