J-S03020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                         :             PENNSYLVANIA
                                         :

v. :

                                         :

GERARD GETHERS :

                                       :

                  Appellant       :     No. 912 EDA 2022

Appeal from the Judgment of Sentence Entered February 3, 2022
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0000845-2021

BEFORE: BOWES, J., McCAFFERY, J., and SULLIVAN, J.

MEMORANDUM BY McCAFFERY, J.:           **FILED MAY 23, 2023**

Gerard Gethers (Appellant) appeals from the judgment of sentence imposed in the Montgomery County Court of Common Pleas following his jury conviction of first-degree murder[1] and related charges for the November 3, 2020, shooting death of Jerry White. On appeal, he challenges three evidentiary rulings, as well as the sufficiency and weight of the evidence supporting his convictions. As we discuss *infra*, we vacate the sentence imposed on Appellant's firearms conviction and remand for resentencing on the offense; in all other respects, we affirm.

---

[1] 18 Pa.C.S. § 2502(a).

## I.    FACTS & PROCEDURAL HISTORY

The trial court summarized the evidence presented at Appellant's jury trial as follows:

[Appellant] shot and killed Jerry White on November 3, 2020, at approximately 3:35 p.m., in front of West Cali Tattoo at 518 West Marshall Street in Norristown, Montgomery County.  At the time, White was the sole eyewitness against [Appellant] in a pending[, unrelated] aggravated assault case, a fact known to [Appellant] when he killed White.

In the aftermath of the shooting of White, law enforcement collected video surveillance from more than a dozen nearby businesses and residences, constituting hours of footage from both before and after the shooting.  The footage, when viewed in chronological order, showed [Appellant] leave a residence at 518 West Lafayette Street in Norristown at approximately 3:24 p.m.  He was wearing a black Nike jacket with a zipper front.  He had the hood pulled tight around his face and was wearing a "Covid" mask.  He also wore black pants with three stripes down the side and white high top sneakers.[3]

_____

[3] Further analysis of the surveillance video footage would reveal that [Appellant] wore a large-faced watch on his left wrist and had a distinctive tattoo on his left hand.

_____

The surveillance footage showed [Appellant] walk from West Lafayette Street to the corner of Chain and Marshall Streets.  At the time, White and four other males[4] were standing nearby, outside of West Cali Tattoo.  Rather than continue to walk toward them, thereby being seen, [Appellant] turned around and went back down Chain Street, then up Haws Alley, which runs behind West Marshall Street.  [Appellant] came back around to West Marshall Street at 3:35 p.m., such that the was able to approach the males more surreptitiously.[5]  He then pulled out a .380 caliber pistol and fired three shots in the direction of White.  The four other males standing nearby scattered, but White, having been hit by at least two of the bullets, took a few steps before collapsing into the street, almost being struck by a passing vehicle.  White suffered gunshot wounds to his left armpit, left forearm and back.

The bullet that entered White's back pierced several organs and his aorta, resulting in White's rapid death.

_____

[4] Jayden Guidici, Quadir Miller, Stephon Windbush and an unidentified bystander.

[5] Norristown Police Detective Brian Saxon testified that he is familiar with the route [Appellant] walked from West Lafayette Street to the tattoo shop and that it is reasonable given the pace observed that . . . it would take approximately 11 minutes.

_____

After firing the fatal shots, [Appellant] returned on foot to the West Lafayette Street residence he had left earlier in the afternoon. Nearby surveillance footage showed him follow a woman into the residence at 3:41 p.m.[6]

_____

[6] Detective Saxon testified that [Appellant] took a more direct route back to West Lafayette Street and that it was reasonable for this return trip to take about six minutes. The woman who entered the residence with [Appellant] would be identified as Jackie McNelly, who lives at the property. She testified that [Appellant] is a family friend who came to her house on the afternoon of the day of the shooting. [Appellant] left for a while and returned later that afternoon. She identified [Appellant] as the man who followed her into her house. At some point during her encounter with [Appellant] that day, McNelly saw him sitting in a black four-door vehicle, which was parked in an alley near her house. Surveillance video of [Appellant] outside of McNelly's house, compared with footage of the shooter, not only showed similar clothing but also revealed an identical scuff mark on the right sneaker and identical sneaker tread.

_____

No one at the scene of the shooting identified the shooter. Detective Charles Leeds of the Norristown Police Department immediately thought of [Appellant], however, upon hearing that White had been killed. Detective Leeds had known White for many years and knew he was an eyewitness against [Appellant] in connection with [Appellant's] alleged non-fatal shooting of Rodney Harris on May 12, 2019, in Norristown.[7] Because Harris had refused to cooperate with police after he had been shot, White was the lone witness against [Appellant]. Indeed, [Appellant] was

charged with aggravated assault for the shooting of Harris after White had identified [him] from a photo array and had given a statement to police. [Appellant] was arrested in that case in October 2019 and held on cash bail. At his preliminary hearing on November 6, 2019, he learned that White, whom [Appellant] knew as "Spider," was a witness against him.

_____

[7] A subsequent check of law enforcement databases indicated that White, at the time of his death, was not involved as a party or a witness in any other criminal cases pending in Norristown or Philadelphia.

_____

The following day, during a recorded prison telephone call, the person speaking with [Appellant] asked when [Appellant] would get his discovery so he could find out who was snitching. [Appellant] responded that he had found out the day before and that he was going to "pin" that person. In a second prison. telephone call that same day, [Appellant] referenced "Spider," and described him as hanging out at the tattoo shop all the time. He also said that the person "would be gone" if [Appellant] ever caught him.

At a bail hearing on July 31, 2020, [Appellant's] then-attorney argued in favor of his release by suggesting the case was weak because, *inter alia*, someone identified as "Spider" was the only witness against [Appellant]. [Appellant] was released on bail that day, but reincarcerated on September 1, 2020. He was released again, this time on house arrest with electronic monitoring, on October 8, 2020, and eventually began working at a local Wendy's restaurant. He did not appear for his scheduled shifts, however, on November 2 and November 3, 2020. Electronic monitoring also showed [Appellant] did not return to his residence by the approved time of 2:00 a.m., on November 3.[8]

_____

[8] [Appellant] subsequently removed his electronic monitoring device and was not wearing it when he was arrested in this case.

_____

Instead, [Appellant] arrived at some point on November 2 to the Lafayette Hill, Montgomery County, home of Demesha Bruce, the mother of his young child. Bruce saw [Appellant] driving a black car that day and believed it to be a Cadillac.

- 4 -

[Appellant] left Bruce's house on the morning of November 3 and arrived at McNelly's house at approximately 2:52 p.m. He then left McNelly's house on foot at 3:24 p.m. The shooting occurred at 3:35 p.m., and [Appellant] reentered McNelly's house at approximately 3:41 p.m. The black Cadillac drove away from the area at 3:46 p.m. [Appellant] then returned in the vehicle[9] to Bruce's house around 5:50 p.m.[10]

_____

[9] Law enforcement subsequently located the black Cadillac in Bucks County. The vehicle was registered to Todd Green, who previously had agreed to sell the vehicle to [Appellant] and had allowed [Appellant] to have possession of it. A subsequent search of the vehicle revealed [Appellant's] Wendy's uniform.

[10] During police questioning, Bruce identified [Appellant] from still photos of surveillance footage and indicated that [Appellant] had a similar looking jacket, pants, sneakers and watch. Law enforcement obtained a video Bruce had received on her cell phone from [Appellant] on October 13, 2020, which showed [him] wearing a similar jacket as the shooter and bearing a similar tattoo on his left hand. They were aware from [Appellant's] arrest in the underlying aggravated assault case that [Appellant] had a distinctive tattoo on his left hand. A still photo of [Appellant] taken in August 2020 and retrieved from Bruce's cell phone depicted him wearing pants and sneakers similar to those worn by the shooter.

Trial Ct. Op., 6/2/22, at 1-6 (record citations & some footnotes omitted). The Commonwealth also presented the following evidence regarding Appellant's actions after the shooting:

[Appellant] walked out of Bruce's residence in Lafayette Hill in the early morning hours of November 4 and the Cadillac is seen driving away. At approximately 5:45 a.m. that same morning, a black Cadillac is seen parked in front of 1225 Route 313 in Bucks County. Around the same time and near the same location, [Appellant] got into a white van and drove to the Cadillac. He stopped briefly to retrieve some items before getting back in the van and driving to Norristown. At approximately 6:45 a.m., [Appellant] parked the van in the same general area as where the

Cadillac had been parked in Norristown the day before and entered McNelly's house.

*Id.* at 10-11 (record citations omitted).

Appellant was subsequently arrested and charged with first-degree murder, third-degree murder, intimidation of a witness (two counts), retaliation against a witness, persons not to possess firearms, possession of a firearm without a license, possessing an instrument of crime (PIC), and recklessly endangering another person (REAP) (four counts).[2]

On May 24, 2021, the Commonwealth filed a *motion in limine* seeking to introduce, at trial, evidence of Appellant's prior bad acts pursuant to Pa.R.E. 404(b).[3] First, the Commonwealth sought to present evidence Appellant was charged with aggravated assault for an unrelated shooting, and that the victim herein, White, was the sole witness against Appellant in that pending proceeding. It requested the court admit the following evidence: (1) testimony of a witness who heard Appellant state he intended to "get even" with White;[4] (2) White's written police statement in the unrelated case; (3) testimony by detectives in the aggravated assault case confirming that White

---

[2] 18 Pa.C.S. §§ 2502(c), 4952(a)(1), (3), 4953(a), 6105(a)(1), 6106(a)(1), 907(a), and 2705, respectively.

[3] Pa.R.E. 404(b) prohibits admission of a defendant's prior bad acts to prove the defendant's character, unless such evidence is admitted for other purposes. *See* Pa.R.E. 404(b)(1)-(2).

[4] Although the trial court subsequently ruled this evidence was admissible, the witness in question died of an overdose before trial. *See* N.T., 6/9/21, at 57-60; N.T., 1/31/22, at 12-13. Therefore, this testimony was not presented at trial.

identified Appellant as the shooter; and (4) testimony from Appellant's bail hearing in the aggravated assault case that his attorney stated the only witness against Appellant was "Spider," White's nickname. **See** Commonwealth's Motion in Limine to Introduce Evidence of Appellant's Other Bad Acts, 5/24/21, at 15-16. The Commonwealth argued the evidence was necessary to prove the witness intimidation and retaliation charges, and admissible to establish Appellant's motive for the murder and to present a complete story of the incident, *i.e.*, *res gestae* evidence. **Id.** at 14-15, 17.

Second, the Commonwealth sought to introduce evidence that Appellant was incarcerated on the unrelated aggravated assault charge from October 17, 2019, until October 8, 2020, when he was released on house arrest, and that he absconded from supervision on November 3, 2020, the day of White's shooting. **See** Commonwealth's Motion in Limine to Introduce Evidence of Appellant's Other Bad Acts at 20-21. It maintained this evidence was admissible pursuant to the "identity, opportunity, absence of mistake or accident, and '*res gestae*' exceptions under Rule 404(b)." **Id.** at 21.

Four days later, Appellant filed a motion in *limine*, seeking to preclude certain evidence, including, *inter alia*: (1) White's verbal and written statements to police in the unrelated aggravated assault case; and (2) the Commonwealth's edited version of the surveillance video purporting to show the shooter's movements, which included zooming, pausing, and captions. **See** Appellant's Motion in Limine, 5/28/21, at 2-3 (unpaginated). With regard to White's statements, Appellant argued that the statements constituted

hearsay, and their admission would violate his Confrontation Clause rights under both the United States and Pennsylvania Constitutions. *See id.*

The trial court conducted a pretrial hearing on June 9, 2021, to consider the competing motions in *limine*. With regard to the surveillance video, the parties agreed that the zooming and pausing of the video was admissible, so long as the Commonwealth also showed the video at full speed and removed all captions. *See* N.T., 6/9/21, at 12-13; *see also* Order, 1/18/22. Appellant also orally objected to the admission of dash cam video from a van he allegedly drove on the day after the murder. *See* N.T., 6/9/21, at 71-72. He maintained the video depicted the van being driven recklessly throughout the night. *See id.* The court ruled that evidence Appellant abandoned a Cadillac (the vehicle purportedly driven by the shooter) in Bucks County, and drove the van back to Norristown "with some of his possessions in it . . . seem[ed] relevant and appropriate[.]" *Id.* at 98. However, the court questioned the relevancy of video allegedly showing Appellant's reckless driving and indicated that the Commonwealth could edit out that part of the video. *See id.* at 97-98.

With regard to the evidence establishing White was a witness against Appellant in the unrelated aggravated assault case, the court found this evidence was "extremely relevant" to establish Appellant's motive, identification and absence of mistake, as well as to show the "natural development of the facts" of the case. *See* N.T., 6/9/21, at 96-97. The court also determined the probative value of the evidence "highly outweigh[ed] any

prejudicial impact[.]" **Id.** at 96. Thus, the court stated it intended to "generally admit[ ]" that evidence, but wanted to further consider Appellant's "confrontation issue." **Id.** at 97.

The case proceeded to a jury trial commencing on January 31, 2022. Prior to the start of testimony, Appellant again challenged the relevancy of the video evidence showing him retrieving items from the Cadillac, parked in Bucks County, and driving back to Norristown in the van. **See** N.T., 1/31/22, at 5-7. Appellant's counsel argued that the Cadillac did not need to be a part of the case because none of the video or witness testimony established Appellant **drove** the Cadillac on the day of the shooting. **See id.** at 7-8. The Commonwealth asserted, however, that the evidence concerning the Cadillac helped corroborate the testimony of their other witnesses. **Id.** at 8. The court agreed, and admitted the evidence a trial. **Id.**

On February 3, 2022, the jury returned a verdict of guilty on the charges of first-degree murder, intimidation of a witness (two counts), retaliation against a witness, PIC, possession of a firearm without a license, and REAP (four counts). The charges of third-degree murder and persons not to possess are firearm were *nol prossed* by the Commonwealth.

The trial court sentenced Appellant that same day to the mandatory minimum term of life imprisonment.[5] Appellant filed a timely post-sentence

_____

[5] The court also imposed concurrent sentences of 6 to 12 years' imprisonment for the witness intimidation charges, 2 to 4 years' imprisonment for retaliation
*(Footnote Continued Next Page)*

motion challenging the sufficiency and weight of the evidence supporting his convictions. The trial court denied the motion on March 2, 2022, and this timely appeal follows.[6]

## II. ISSUES ON APPEAL

Appellant presents five issues for our review:

1. Whether the [t]rial [c]ourt abused its discretion when it granted the Commonwealth's Motion *in Limine* to Introduce Evidence of Appellant's Prior Bad Acts, including evidence of written and verbal statements of . . . White from the May 12, 2019 alleged [a]ggravated [a]ssault charges, pursuant to Pa.R.E. 404(b)[?]

2. Whether the [t]rial [c]ourt abused its discretion when it denied Appellant's Motion *in Limine* to preclude the written and verbal statements of . . . White in reference to the May 12, 2019 alleged [a]ggravated [a]ssault charge as hearsay in that the

_____

against a witness, 4 to 8 years' imprisonment for the firearms offense, and 6 to 24 months' imprisonment for each of the REAP charges.

As the trial court notes in its opinion, the sentence of 4 to 8 years' imprisonment imposed on the charge of possession of a firearm without a license is beyond the statutory maximum term permitted by law. **See** Trial Ct. Op. at 1 n.1. Because that crime is graded as a third-degree felony, the maximum permissible sentence is seven years' incarceration. **See** 18 Pa.C.S. §§ 1103(3), 6106(a)(1). The trial court requests this Court "amend by agreement" the sentence imposed on the firearms offense to a term of 3 to 6 years' imprisonment, concurrent to the life sentence for first-degree murder. **See** Trial Ct. Op. at 1 n.1. Appellant "joins in this specific request of the trial court." Appellant's Brief at 21 n.1. Thus, we vacate the sentence on the firearms offense, and remand for the court to impose the new, agreed-upon sentence.

[6] Appellant complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

- 10 -

Commonwealth did not prove that said statements met the hearsay exception of Pa.R.E. [ ] 806(b)(6)[?]

3. Whether the [t]rial [c]ourt abused its discretion when it denied Appellant's Oral Pre-trial Motion to exclude a portion of the Commonwealth's proposed video exhibit which showed a van being driven by Appellant from Bucks County to Norristown, PA on the day after the alleged murder as irrelevant as said portion of the video failed to establish a material fact, make a fact at issue more or less probable, or support a reasonable inference supporting a material fact and the probative value of its inclusion was outweighed by the likelihood of unfair prejudice against Appellant[?]

4. Whether the evidence presented at trial was insufficient to support a conviction on all charges in that there was not proof beyond a reasonable doubt that Appellant was the individual who shot . . . White[?]

5. Whether the [t]rial [c]ourt abused its discretion in denying Appellant's Post-Sentence Motion requesting a new trial as the jury's verdict was against the weight of the evidence in that there was not proof beyond a reasonable doubt that Appellant was the individual who shot . . . White[?]

Appellant's Brief at 5-6.[7]

### III.  EVIDENTIARY RULINGS

In his first three issues, Appellant challenges the trial court's evidentiary rulings.  When considering these claims, we must bear in mind the following:

[The a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion.  An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is

---

[7] Despite being granted two extensions of time, the Commonwealth has not filed an appellee brief in this matter.

manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

***Commonwealth v. Dula***, 262 A.3d 609, 626 (Pa. Super. 2021) (citation omitted), *appeal denied*, 273 A.3d 985 (Pa. 2022).

We begin with the general rule that "[a]ll relevant evidence is admissible[.]" Pa.R.E. 402. Evidence is deemed relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401(a)-(b). Regardless of relevancy, however, the Pennsylvania Rules of Evidence generally preclude the two types of evidence alleged to be at issue herein: (1) evidence of a defendant's prior crimes or bad acts and (2) hearsay. ***See*** Pa.R.E. 404(b)(1), 802.

Pa.R.E. 404(b)(1) prohibits evidence of a defendant's prior crimes or bad acts simply to prove their bad character. ***See*** Pa.R.E. 404(b)(1). However, such evidence may be admissible when offered for another purpose, such as to prove motive, intent, identity, or absence of mistake, or pursuant to the *res gestae* exception, that is, where it is "part of the history of the case and form[s] part of the natural development of the facts." Pa.R.E. 404(b)(2); ***Commonwealth v. Ivy***, 146 A.3d 241, 251 (Pa. Super. 2016). "In a criminal case, this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." ***Id.***

Rule 802 generally precludes the admission of hearsay testimony. ***See*** Pa.R.E. 802. Hearsay is defined as "an out of court statement offered for the truth of the matter asserted[.]" ***Commonwealth v. Manivannan***, 186 A.3d

472, 482 (Pa. Super. 2018) (citation omitted). *See also* Pa.R.E. 801(a)-(c). However, an out-of-court statement that is not offered for its truth, but rather for another reason — such as to "establish motive" or to "complete the story" — is admissible as non-hearsay. *See Manivannan*, 186 A.3d at 482-83 (citations & quotation marks omitted). Moreover, Rule 804 provides exceptions to the rule against hearsay when, as here, the declarant is unavailable as a witness. *See* Pa.R.E. 804(a)(4) (stating "[a] declarant is considered to be unavailable as a witness if the declarant . . . cannot be present or testify . . . because of death"). Rule 804(b)(6) sets forth the exception known as "forfeiture by wrongdoing." *See* Pa.R.E. 804(b)(6); *Commonwealth v. Morales*, 91 A.3d 80, 94 (Pa. 2014). It permits the admission of an unavailable declarant's statement when it is "offered against a party that wrongfully caused . . . the declarant's unavailability as a witness, and did so intending that result." Pa.R.E. 804(b)(6).

### (a) Evidence related to May 2019 shooting

With these general rules in mind, we consider Appellant's first two issues on appeal. Both claims challenge the trial court's pretrial ruling admitting prior bad acts evidence related to Appellant's purported involvement in a May 2019 shooting, including oral and written statements victim White provided to police implicating Appellant in that crime.

First, Appellant argues the trial court abused its discretion when it granted the Commonwealth's motion *in limine* to introduce evidence of the unrelated aggravated assault case when the Commonwealth failed to produce

- 13 -

any evidence at the pretrial hearing to support that ruling. **See** Appellant's Brief at 27. Indeed, he contends that the Commonwealth sought to present, *inter alia*, the following evidence at trial to prove his motive for the murder of White was retaliation for White's cooperation with police in the aggravated assault case: (1) White's written statement to police implicating Appellant as the May 2019 shooter; and (2) the testimony of a detective confirming White identified Appellant as the May 2019 shooter. **See id.** at 26. However, Appellant argues the Commonwealth "never produced a copy of [White's] written statement . . . as an exhibit at the June 9, 2021, hearing[,]" nor presented testimony from the police detective who recorded White's identification of Appellant.[8] **Id.** at 27. Thus, he insists there was "insufficient evidence presented . . . for the trial court to weigh, examine or consider" before rendering its decision to admit this Rule 404(b) evidence. **See id.** at 30.

Appellant also contends the trial court abused its discretion when it determined that this prior bad act evidence was admissible pursuant to the "identity" and *res gestae* exceptions. **See** Appellant's Brief at 30, 32-33. He insists the "identity" exception requires proof that the prior and present crime were "so nearly identical in method as to earmark them as the handiwork of

_____

[8] In fact, the only prior bad acts "evidence" the Commonwealth presented at the pretrial hearing related to the proposed testimony of the witness who heard Appellant state he wanted to get even with White. **See** N.T., 6/9/21, at 17-48. Unfortunately, as noted above, that witness died before trial and none of the evidence concerning her proposed testimony was admitted.

- 14 -

the accused[,]" and here there was no evidence of a "signature" crime. *Id.* at 30-32 (citation & quotation marks omitted). Moreover, Appellant maintains the Commonwealth failed to establish that the May 2019 shooting "was part of a chain, sequence, or natural development of events which formed the history of the case" so as to satisfy the *res gestae* exception. *Id.* at 33 (quotation marks omitted). He argues the inclusion of White's statements in the prior shooting case was "highly prejudicial" considering "the weakness of [White's] identification of Appellant in [that case] and the lack of supporting evidence to conclude he was the shooter on May 12, 2019." *Id.*

In his second, related claim, Appellant contends the trial court abused its discretion when it denied his motion *in limine* to preclude White's prior statements as hearsay. Appellant's Brief at 33. He insists the statements were not admissible pursuant to the "forfeiture by wrongdoing" exception at Pa.R.E. 804(b)(6) because the Commonwealth "failed to show by a preponderance of the evidence that [he] was involved in, or responsible, for the procuring the unavailability of [ ] White and that [he] acted with the intent of procuring [ ] White's unavailability as an actual or potential witness." *Id.* at 35-36.

We conclude Appellant is entitled to no relief. First, we reject Appellant's argument concerning the "lack of an evidentiary record" at the pretrial hearing. *See* Appellant's Brief at 30. Appellant was well aware of White's written police statement implicating him in the May 2019 shooting, as well as White's identification of Appellant in a police photo array — in fact, he sought

to preclude this same evidence in his competing motion *in limine*. At the pretrial hearing, the Commonwealth detailed the evidence it sought to introduce at trial, which included "the written statement that . . . White gave to Norristown Police in reference to the aggravated assault case[, and] testimony from detectives regarding . . . White picking [Appellant] out of a photo array . . . and identifying him as the man who shot the victim" in May 2019. N.T., 6/9/21, at 78. Appellant provides no authority for his assertion that the Commonwealth was required to introduce the statement at issue into evidence or present the testimony of the detective at the pretrial hearing. Further, he does not argue that the evidence the Commonwealth later produced at trial was different than the evidence described at the pretrial hearing. Indeed, Appellant lodged no objection when White's written statement was read to the jury, or when Detective Leeds testified that White identified Appellant as the May 2019 shooter from a photo array. *See* N.T., 2/1/22, at 95-105. Thus, his first argument fails.

Next, while Appellant challenges the admission of evidence concerning his involvement in the May 2019 shooting pursuant to the identity and *res gestae* exceptions, he fails to address the primary reason this evidence was admitted — to establish his **motive** for the murder of White. At the conclusion of the pretrial hearing, the trial court opined:

> [T]he fact that [ ] White was a witness in a potential aggravated assault case, pending aggravated assault case, is extremely relevant and the probative value highly outweighs any prejudicial impact to [Appellant]. Clearly, there is the importance of the motive, to establish his motive, to establish his identification, and

- 16 -

to establish absence of mistake or accident. It really is the basis for this case in the sense that it really is the keystone of the whole case. And the jury must hear the natural development of the facts in this case to understand it and the *res gestae* part of that is extremely important. So I'm generally admitting that.

N.T., 6/9/21, at 96-97.

We agree. White's identification of Appellant as the May 2019 shooter, combined with evidence that Appellant was **aware** White was the Commonwealth's only witness in that case, was relevant to establish Appellant's motive to murder White on the day in question. ***See Commonwealth v. Collins***, 70 A.3d 1245, 1252 (Pa. Super. 2013) (prior bad acts evidence that defendants in murder prosecution were rival drug dealers of victims relevant to establish motive and "link[ ]" victims to defendants). Appellant does not challenge this ruling — which we agree was correct — and, thus, he is entitled to no relief.[9]

Moreover, we emphasize that Appellant was also charged with both intimidation of a witness and retaliation against a witness **because** White was a witness against Appellant in the aggravated assault case. ***See*** 18 Pa.C.S. §§ 4952(a)(1), (3), 4953(a); Bill of Information, 4/22/21, Counts 3-5. Thus, White's statements to police implicating Appellant in the May 2019 shooting were clearly relevant to prove these other charges.

---

[9] We note Appellant emphasizes the "weakness of [White's] identification" of him as the shooter in the May 2019 aggravated assault case. ***See*** Appellant's Brief at 33. However, the strength or weakness of White's identification is irrelevant — the fact that White named Appellant as the culprit provides a motive for Appellant to seek retribution against White.

Appellant's hearsay argument also fails. White's written and oral statements to police identifying Appellant as the May 2019 shooter do **not** constitute hearsay. "Generally, our appellate courts have held that out-of-court statements by homicide victims are admissible when the statements are relevant for some other purpose, such as proof of motive or malice." **Commonwealth v. Luster**, 71 A.3d 1029, 1041 (Pa. Super. 2013) (*en banc*). Here, the statements were not offered for their truth — that is, to establish that Appellant was, in fact, the May 2019 shooter. Rather, White's statements were offered to establish that Appellant had a motive to murder White — whether true or not, White identified Appellant as the shooter in the May 2019 case and was the Commonwealth's sole witness in that case. Thus, White's out-of-court statements are not hearsay.

Lastly, we note that the trial court provided the following limiting instruction to the jury:

> You have heard evidence to the effect that [Appellant] was charged with aggravated assault in connection with . . . [a May 2019] shooting in Norristown.
>
> . . . [H]e is not on trial for that. Is that understood? . . .
>
> This evidence is before you for a limited purpose. That is, for the purpose of tending to show motive, intent, and identification.
>
> This evidence must not be considered by you in any other way that for the purpose I just stated. You must not regard this evidence as showing that [Appellant] is a person of bad character or criminal tendencies from which you might be inclined to infer guilt. Is that understood?

N.T., 2/3/22, at 75-76. A jury is "presumed to follow the court's instruction[.]" ***Commonwealth v. Cash***, 137 A.3d 1262, 1273 (Pa. 2016). Thus, Appellant's first two evidentiary challenges fail.

(b) Video evidence regarding Cadillac

In his third issue, Appellant challenges the trial court's evidentiary ruling admitting the Commonwealth's video exhibit showing Appellant retrieving items from a black Cadillac in Bucks County, putting them in a van, and driving the van back to the area of the murder. ***See*** Appellant's Brief at 37. He maintains the video was "irrelevant" because the Commonwealth failed to prove the Cadillac was used in the commission of the murder — there was no video showing Appellant driving the Cadillac to or from the murder scene. ***See id.*** at 37-38. Appellant also insists this evidence was unfairly prejudicial. ***Id.*** at 40.

Preliminarily, we note that Appellant's issue as framed in his brief is different from the claim he raised in his Pa.R.A.P. 1925(b) statement. In the Rule 1925(b) statement, Appellant asserted the trial court abused its discretion when it denied his oral motion "to exclude a portion of the Commonwealth's proposed video exhibit which **shows a Cadillac being driven from Buck County to Norristown, PA on the day after the alleged murder** as irrelevant[.]" Appellant's Statement of Matters Complained of on Appeal, 4/19/21, at 1 (unpaginated) (emphasis added). As the trial court noted in its opinion, it "scoured the trial record and [did] not recall evidence of a Cadillac being driving from Bucks County to Norristown on

- 19 -

the day after the shooting." Trial Ct. Op. at 10. As explained above, Appellant does not elaborate on this claim in his brief, but rather, addresses a different issue entirely, focusing on video of him retrieving items from the abandoned Cadillac in Bucks County, putting them in a van, and driving the van back to Norristown on the day after the murder. *See* Appellant's Brief at 37. Thus, because Appellant's present claim was not preserved in his court-ordered Rule 1925(b) statement, it is waived for our review.[10] *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or raised in accordance with the provisions of this paragraph (b)(4) are waived.").

Nevertheless, we note the trial court addressed the relevancy of the evidence Appellant now challenges in its opinion. The court opined:

> [E]vidence presented by the Commonwealth demonstrated that [Appellant] walked out of Bruce's residence in Lafayette Hill in the early morning hours of November 4 and the Cadillac is seen driving away. At approximately 5:45 a.m. that same morning , a black Cadillac is seen parked in front of 1225 Route 313 in Bucks County. Around the same time and near the same location,

---

[10] We note, too, that the issue raised in Appellant's brief cannot be characterized as a  subsidiary issue of the claim he raised in his Rule 1925(b) statement. *See Commonwealth v. Price*, 284 A.3d 165, 171 (Pa. 2022) (explaining that in determining whether one issue is a subsidiary of another, "the question is whether resolution of the two issues is sufficiently connected to each other such that the resolution of one may depend in some respect upon resolution of the other"). Indeed, in the Rule 1925(b) statement, he challenged video evidence of "a Cadillac being driven from Bucks County to Norristown . . . on the day after the alleged murder[,]" while in his brief, he challenges video of him retrieving items from a Cadillac in Bucks County, entering a van, and driving the van back to Norristown. *See* Appellant's Statement of Matters Complained of on Appeal at 1 (unpaginated); Appellant's Brief at 37.

[Appellant] got into a white van and drove to the Cadillac. He stopped briefly to retrieve some items before getting back in the van and driving to Norristown. At approximately 6:45 a.m., [Appellant] parked the van in the same general area as where the Cadillac had been parked in Norristown the day before and entered McNelly's house.

This evidence plainly is relevant to demonstrate [Appellant's] connection to the Cadillac seen in Norristown on the day of the shooting. Additionally, and although not raised in the oral pre-trial motion made before this court, the evidence was not unfairly prejudicial to [Appellant] and he received a fair trial.

Trial Ct. Op. at 10-11 (record citations omitted).

We agree with the court's analysis. Appellant asserts that any evidence regarding the Cadillac is irrelevant because there was no video footage or witness testimony placing him as the driver of the black Cadillac seen on surveillance video arriving in the area of McNelly's residence just before the murder and leaving shortly after the murder. However, direct evidence is not required. Rather, the Commonwealth provided circumstantial evidence connecting Appellant to the black Cadillac, including testimony that he arrived and left the area of the murder in a black Cadillac, and corroborating surveillance video of that black Cadillac. *See* N.T., 2/1/22, at 34, 42-43 (McNelly testified Appellant was operating a black four-door car on the day of the murder, which was parked in the alley next to her house); 168-69 (Bruce testifying Appellant drove a black Cadillac to her residence on November 2, 2020, the day before the murder); N.T., 2/2/22, at 46-49, 54-55 (surveillance video of the black Cadillac in the area of the murder and Bruce's home). Moreover, we emphasize the actual evidence Appellant now contests was admitted *via* stipulation. The parties stipulated that: (1) before 6:00 a.m. on

the morning after the murder, Appellant retrieved items from a black Cadillac parked in Bucks County; (2) that Cadillac was registered to Todd Green, who stated he agreed to sell it to Appellant and allowed Appellant to take possession of the car; and (3) a search of the Cadillac uncovered Appellant's work uniform. *See* N.T., 2/1/22, at 232-33. Accordingly, we conclude the trial court did not abuse its discretion when it admitted the evidence at issue.

## IV. SUFFICIENCY OF THE EVIDENCE

Appellant's fourth claim presents a challenge to the sufficiency of the evidence supporting his convictions. Rather than addressing the individual elements of each offense, Appellant broadly asserts there was insufficient evidence for the jury to conclude he was the perpetrator of the crime. *See* Appellant's Brief at 41-42. He emphasizes the following: (1) the shooter, who was masked at all times, was never positively identified by any witness; (2) none of the shooter's clothes, or any firearm, was recovered from Appellant's home or car; (3) there was no video of Appellant driving the black Cadillac to or from Norristown on the day of the shooting; (4) the Commonwealth's FBI analyst could not positively match any of the evidence from the shooting to Appellant; and (5) the only link between Appellant and White was the May 2019 shooting, and Appellant denied his involvement in that case. *See id.* 42-44. Appellant also noted that there was evidence presented at trial that "someone else besides Appellant may have had a motive" to harm White. *See id.* at 50.

Preliminarily, we note the trial court found Appellant's sufficiency claim waived because his Rule 1925(b) statement did not specify "the elements of the offenses he is challenging on appeal." *See* Trial Ct. Op. at 12. Rather, Appellant simply asserted the evidence "was insufficient to support the jury's verdict of guilty" on all of his charges, without providing any detail. *See* Appellant's Statement of Matters Complained of on Appeal at 2 (unpaginated).

This Court has consistently held:

> [T]o "preserve a sufficiency claim, the Rule 1925(b) statement must specify the element or elements upon which the evidence was insufficient." *Commonwealth v. Widger*, 237 A.3d 1151, 1156 (Pa. Super. 2020). If the appellant does not specify such elements, the sufficiency claim is deemed waived. *Commonwealth v. Roche*, 153 A.3d 1063, 1072 (Pa. Super. 2017).

*Commonwealth v. McFarland*, 278 A.3d 369, 381 (Pa. Super. 2022), *appeal denied*, 2023 WL 368601 (Pa. Jan. 24, 2023). Moreover, "[s]uch specificity is of particular importance in cases where, as here, [A]ppellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *See Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013). *See also Commonwealth v. Stiles*, 143 A.3d 968, 982 (Pa. Super. 2016) (Appellant waived sufficiency argument challenging two counts of first-degree murder and two firearms offenses when Rule 1925(b) statement claimed convictions were based on "insufficient evidence because the circumstantial inferences drawn from the evidence were unwarranted and unreliable").

In the present case, Appellant's generic Rule 1925(b) statement failed to specify which of his 10 convictions he was challenging, and, more importantly, which elements of those convictions the Commonwealth failed to prove. To the extent he asserts the claim he intended to raise was "clear from both his defense put forth at trial as well as his Post-Sentence Motion[,]"[11] we remind Appellant that compliance with a court-ordered Rule 1925(b) statement is mandatory, and the trial court is not required to scour the record to determine Appellant's specific claim on appeal.[12] Thus, we agree with the trial court that this issue is waived.

Nevertheless, as Appellant asserts, he did argue in his post-sentence motion that the evidence was insufficient to prove **he** was the person who shot and killed White. **See** Appellant's Post-Sentence Motion, 2/11/22, at 2-3 (unpaginated). However, even if we were to consider this claim, we would conclude he is entitled to no relief.

Our review of a challenge to the sufficiency of the evidence is well-settled:

[We must determine] whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is

---

[11] **See** Appellant's Brief at 42 n.2.

[12] We note that in his statement of questions presented in his brief, he properly framed his sufficiency argument, claiming "there was not proof beyond a reasonable doubt that Appellant was the individual who shot [ ] White." Appellant's Brief at 6. Had he presented this claim in his Rule 1925(b) statement, the trial court could have properly addressed the issue in its opinion.

sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for a fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Williams*, 255 A.3d 565, 578–79 (Pa. Super. 2021)

(citation omitted).

As noted above, Appellant insists there was insufficient evidence to support the jury's determination that he was the person who murdered White. With regard to identification evidence, we must bear in mind the following:

In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes. Evidence of identification need not be positive and certain to sustain a conviction. [A]ny indefiniteness and uncertainty in the identification testimony goes to its weight. Direct evidence of identity is, of course, not necessary and **a defendant may be convicted solely on circumstantial evidence**.

*Commonwealth v. Strafford*, 194 A.3d 168, 175–76 (Pa. Super. 2018)

(citations, quotation marks & paragraph break omitted; emphasis added).

Appellant's argument focuses on the lack of a positive identification that he was the masked shooter, the lack of any evidence definitively connecting

- 25 -

him to the crime, and the possibility of an alternate suspect. ***See*** Appellant's Brief at 42-44, 50. However, as summarized by the trial court in its opinion, the circumstantial evidence presented by the Commonwealth was more than sufficient to support Appellant's convictions. ***See*** Trial Ct. Op. at 1-6. Appellant had a motive to shoot White, was identified by witnesses as being near the scene of the crime at the time of the crime, generally matched the description of the masked shooter and was known to have a tattoo similar to the shooter's, failed to report to work on the day of the shooting and was subsequently arrested without his ankle monitor, and was connected to a black Cadillac similar to a vehicle present near the scene of the crime. Moreover, we note Appellant emphasizes that the Commonwealth's FBI forensic analyst, George Skaluba, could not definitively match the jacket worn by the shooter, the tattoo on the shooter's arm, or the Cadillac seen on surveillance video to a jacket owned by Appellant, Appellant's tattoo, and the Cadillac recovered in Bucks County. ***See*** Appellant's Brief at 48. However, he fails to acknowledge that the analyst was unable to do so based on the quality of the images he examined, and, in fact, testified he also could not **eliminate** any of the matches. ***See*** N.T., 2/1/22, at 269-72, 279-80. Furthermore, the evidence suggesting another person **may** have had a motive to murder White was rejected by the jury, as was its prerogative. ***See*** ***Williams***, 255 A.3d at 579. Thus, even if Appellant's sufficiency claim was not waived, we would conclude he is entitled to no relief.

## V.    WEIGHT OF THE EVIDENCE

In his final claim, Appellant contends the verdicts were against the weight of the evidence presented at trial.[13]  He argues the evidence identifying him as White's murderer was "tenuous, vague and uncertain."  Appellant's Brief at 52.  He details testimony and evidence supporting his assertion that he was not the shooter, which he claims the trial court "failed to adequately address."  *Id.* at 52-53.  *See also id.* at 53-63 (none of the witnesses to the shooting identified Appellant, or saw a tattoo on his hand; the detective who compiled the video of the shooter's path thought the shooter was not wearing a mask when he left the West Lafayette residence; the evidence demonstrated the shooter could have been aiming at any of the witnesses and not White; McNelly's testimony was "filled with contradictions;" White's identification of Appellant as the May 2019 shoot was "extremely weak;" Bruce did not recognize Appellant in any photos obtained from the video footage; no firearm, or clothing worn by the shooter was recovered from the Cadillac; the Commonwealth's expert analyst could not conclude definitively that the jacket worn by the shooter matched a jacked owned by Appellant, the tattoo seen on the shooter matched Appellant's tattoo, or that the Cadillac in the videos matched a Cadillac sold to Appellant; and there was evidence White's murder

_____

[13] Appellant preserved his weight of the evidence claim in a timely filed post-sentence motion.  *See* Pa.R.Crim.P. 607(A)(3).

could have been related to his drug dealing or threatening texts he had received a month before the murder).

Our review of a weight of the evidence claim is well-established:

The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the fact[s], certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

**Williams**, 255 A.3d at 580 (citation omitted & paragraph break added).

In rejecting Appellant's weight of the evidence claim, the trial court opined:

[T]he evidence . . . amply supports the jury's verdict and does not shock the conscience of this court, which presided over the jury trial. Rather, the overwhelming evidence presented by the Commonwealth demonstrates [Appellant] went to the tattoo parlor on West Marshall Street where he knew White hung out, and killed White by shooting him in vital areas of the body with an unlicensed firearm. At the time, [Appellant] knew White was the lone eyewitness against him in a pending aggravated assault case. As a result of [Appellant] killing White, the charges in that underlying case remain unresolved. [Appellant] also recklessly endangered the four others who were standing near White when [Appellant] fired three bullets at him.

Trial Ct. Op. at 13.

- 28 -

Upon our review, we detect no abuse of discretion in the trial court's ruling denying Appellant's weight of the evidence challenge. As explained *supra*, our review is limited to whether the trial court abused its discretion in determining the jury's verdict did not shock the court's conscience. **See Williams**, 255 A.3d at 580. Appellant fails to convince this Court otherwise. His summary of the evidence focuses solely on testimony which appears to support his assertion that the identity of the shooter could not be determined beyond a reasonable doubt. However, he ignores the substantial circumstantial evidence connecting him to the crime. The jury, as fact finder, was the sole judge of credibility, and was free to believe all, some or none of the evidence presented. **See id.** at 578-79, 580. In its discretion, the jury credited the circumstantial evidence presented by the Commonwealth which led to the identification of Appellant as the culprit. **See Strafford**, 194 A.3d at 175-76 ("Direct evidence of identity is, of course, not necessary and a defendant may be convicted solely on circumstantial evidence."). Neither the jury's verdict, nor the trial court's denial of Appellant's weight claim, shock's the conscience. Thus, Appellant is entitled to no relief.

## VI. CONCLUSION

As noted **supra**, both Appellant and the trial court agree that the sentence imposed on Appellant's firearms offense is illegal. **See supra** n.5. Accordingly, we vacate the judgment of sentence imposed on Appellant's conviction of possession of a firearm without a license, and remand for

resentencing on that offense. In all other respects, we affirm the judgment of sentence.

Judgment of sentence affirmed in part and vacated in part. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2023