J-S02045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN AUGUST BEAULAC | : | |
| | : | |
| Appellant | : | No. 1574 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 1, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0002601-2023

BEFORE:  LAZARUS, P.J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED MAY 5, 2025**

Steven August Beaulac appeals from the judgment of sentence imposed following his convictions for simple assault (bodily injury attempted or caused), simple assault (physical menace), persons not to possess firearms, and harassment.[1] He challenges the trial court's admission of prior bad acts evidence and the sufficiency of the evidence to support his conviction for persons not to possess firearms. We affirm.

The trial court accurately summarized the facts as follows:

> On April 22, 2023, [Beaulac] and his wife, ["Victim"] engaged in an argument which eventually progressed into a physical altercation. [Victim] proceeded to leave the couple's residence . . . in New Hanover Township and walked to a local Wawa in the hope that tempers would eventually cool. Approximately thirty (30) minutes to one (1) hour later, [Victim] returned to the residence and observed

_____

[1] 18 Pa.C.S.A. §§ 2701(a)(1), 2701(a)(3), 6105(a)(1), and 2709(a)(1), respectively.

[Beaulac] standing on the side porch with an agitated look on his face. [Victim] attempted to head back towards the Wawa, but [Beaulac] ran across the yard and tackled her to the ground.

[Beaulac] subsequently grabbed [Victim's] hair, put his hand on the back of her neck and dragged her to the side porch of the residence, where he continued to restrain her. [Victim] attempted to run inside the residence, but could not free herself from [Beaulac's] grasp. [Victim] threatened to call the authorities and [Beaulac] proceeded to pull a firearm from his waistband and [wave] it towards her general vicinity. [Victim] immediately determined that this firearm was her personal property and remembered that [Beaulac] had knowledge the firearm was typically stored in a case inside the couple's bedroom closet. [Victim] started swinging her arms towards [Beaulac] in an effort to free herself, and [Beaulac] placed the firearm back into his waistband. One of [Victim's] swings connected with [Beaulac's] chin and he subsequently punched her in the nose. [Beaulac] and [Victim] proceeded to grapple with each other and shatter[] the glass portion of the door which leads into the residence from the side porch. [Victim] and [Beaulac's] grappling continued into the residence until [Victim] was able to run into the bathroom. [Beaulac] followed [Victim] into the bathroom, pushed her to the ground and took her cell phone. [Victim] was eventually able to regain possession of her cell phone and called 911. During this call, [Victim] informed authorities she believed that [Beaulac] was still in possession of the firearm. [Victim] waited upstairs in the residence for the arrival of the police and [Beaulac] moved between the interior and exterior of the residence for the majority of this time period.

At approximately 12:32 a.m. on April 23, 2023, authorities responded to the residence and, upon their arrival, observed [Beaulac] walking from the vicinity of the neighboring residence . . . towards the couple's . . . residence. [Beaulac] placed his hands in the air upon seeing the authorities arrive. During their interactions with [Beaulac], the police noted that he appeared to be intoxicated. Authorities also spoke with [Victim] to determine what had occurred during the incident. While investigating the scene, authorities were approached by Margaret Hegeman, the [couple's] neighbor . . . Authorities

explained to Ms. Hegeman that they were looking for evidence and she informed them that she had been awoken by her dog earlier in the evening due to unusual noises emanating from the back porch of her residence. Specifically, Ms. Hegeman noted that once she woke up, she heard the wind chimes on her back porch ringing which was extremely unusual considering they do not ring even during windy conditions. When authorities examined Ms. Hegeman's porch, they discovered a loaded firearm, a bottle of Jamison liquor, and a cooler type bag containing multiple beer cans. The porch was enclosed with a screen that had been ruptured in the general vicinity of where the firearm and other objects were found. Authorities later determined [Beaulac] had a prior felony conviction[] which prohibited him from possessing a firearm.

The Pennsylvania State Police performed a DNA analysis on the recovered firearm and determined that [Beaulac] could be identified as a contributor to the DNA profile on the firearm which indicated a mixture of four (4) DNA contributors. [Beaulac] was also classified as one of two "major contributors" in this mixture.

Trial Court Opinion, filed 8/16/24, at 1-3.

Prior to trial, the Commonwealth filed a motion in *limine* for admission of Beaulac's prior bad acts under Pennsylvania Rule of Evidence 404(b). The Commonwealth sought to admit evidence of two prior incidents in which Beaulac allegedly assaulted Victim. The court granted the Commonwealth's motion *in limine*.

At trial, Victim testified about the two prior incidents. She stated that in February 2023, she and Beaulac were fighting and she "was trying to get away from him, and [her] head ended up getting slammed against the bathroom window." N.T. Trial – Volume I, 1/24/24, at 46. Victim testified that the second incident took place around Easter 2023 and she "had to call [her] mom to

come pick [her] up because of our arguing and [Beaulac] getting physical with me and him not leaving the situation alone." *Id.* at 47. Victim stated that these fights occurred when Beaulac had been drinking. *Id.* She said that during the fights, Beaulac would lock her in the bedroom and force her to sit down and talk to him when she did not want to, and "[i]t always ended up having to get physical then." *Id.* at 48. Victim testified that leading up to the April 22, 2023 assault, she was "miserable" in her marriage, "didn't even want to come back to the house most of the days," and wanted to divorce Beaulac. *Id.* at 46, 48.

During the court's charge to the jury, the court gave the following cautionary instruction:

> You have heard evidence [Beaulac] was involved in another offense which he was not charged for in this trial. I'm speaking to the testimony to the effect that, on two prior occasions, [Beaulac] is alleged to have physically assaulted [Victim]. This evidence is before you for a limited purpose. That is for the purpose intending to describe the complete story of the events which allegedly took place on April 22, 2023. This evidence should not be considered by you in any way other than for that purpose that I have stated. You must not regard this evidence as showing [Beaulac] is a person of bad character of criminal tendencies from which you may be inclined to infer guilt.

N.T. Trial – Volume II, 1/25/24, at 160-61.

After a two-day bifurcated trial, the jury convicted Beaulac of simple assault (bodily injury attempted or caused) and simple assault (physical menace). *Id.* at 179. The jury found Beaulac not guilty of unlawful restraint. *Id.* The jury also determined that Beaulac possessed, used, or controlled a

- 4 -

loaded firearm during the event. *Id.* After the jury was excused, the court found Beaulac guilty of persons not to possess a firearm and harassment. *Id.* at 183-184. The court sentenced Beaulac to an aggregate term of five to 10 years' imprisonment. Beaulac did not file post-sentence motions. This appeal followed.

Beaulac raises the following issues:

1. Whether the motion court erred in ruling in favor of the Commonwealth and admitting the prior bad acts of Mr. Beaulac via written order dated January 18, 2024.

2. Whether the evidence put forth at trial was sufficient to demonstrate that Mr. Beaulac possessed a firearm and thus sustain his conviction for 18 Pa.C.S.A.§ 6105.

Beaulac's Br. at 7.

Beaulac first argues that the court erred in permitting Victim to testify about prior bad acts of violence allegedly committed by him under Pa.R.E. 404(b). He asserts that there was no "substantial evidence of prior bad acts" since the assaults were "unreported, uncorroborated and self-serving" and "there were no photographs of injuries, witness statements, police reports or Protection from Abuse Orders." *Id.* at 20. Beaulac maintains that "this propensity evidence allowed the jury to disregard the weakness of the evidence of assault in the present matter, thus obviating the constitutional requirement that the Commonwealth must prove every element of the crimes charged beyond a reasonable doubt." *Id.* at 19. In Beaulac's view, the prior bad acts were only offered to show his propensity toward violence while under

the influence of alcohol, which is contrary to the purpose of Rule 404(b). He asserts that "the exceptions to the rule against prior bad acts cannot be stretched in ways that effectively eradicate the rule." *Id.* at 18. Beaulac further maintains that "the probative value of the alleged prior assaults were . . . small in comparison to their potential prejudice as propensity evidence." *Id.* at 20.

The admission of evidence is within the discretion of the trial court and will only be reversed where there is an abuse of that discretion. *See Commonwealth v. Radecki*, 180 A.3d 441, 451 (Pa.Super. 2018). An abuse of discretion exists where the court overrides or misapplies the law or exercises judgment in a way "that is manifestly unreasonable, or the result of bias, prejudice, ill will or partiality, as shown by the evidence of record." *Id.* (citation omitted).

Rule 404(b) of the Pennsylvania Rules of Evidence bars admission of evidence of prior bad acts to establish a person's character and to prove that the person acted on a particular occasion in conformity with that character. Pa.R.E. 404(b)(1). However, evidence of prior bad acts is permissible for some other, proper purpose, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). Similarly, evidence of prior bad acts evidence may be admissible under the "*res gestae*" or "complete story" exception. *See Commonwealth v. Carter*, 320 A.3d 140, 149 (Pa.Super. 2024). Under this exception, evidence of other criminal acts is admissible "to complete the story

of the crime on trial by proving its immediate context of happenings near in time and place." *Commonwealth v. Brown*, 52 A.3d 320, 326 (Pa.Super. 2012) (citation omitted). This exception applies where the acts "were part of a chain or sequence of events which formed the history of the case and were part of its natural development." *Commonwealth v. Knoble*, 188 A.3d 1199, 1205 (Pa.Super. 2018) (citation omitted).

"Evidence of prior abuse between a defendant and an abused victim is generally admissible to establish motive, intent, malice, or ill-will" or to show the history of the case and the natural development of facts. *Commonwealth v. Ivy*, 146 A.3d 241, 252 (Pa.Super. 2016); *see also, e.g., Commonwealth v. Ganjeh*, 300 A.3d 1082, 1091-92 (Pa.Super. 2023), *appeal denied*, 313 A.3d 448 (Pa. 2024) (holding trial court did not abuse its discretion in finding evidence of prior incidents of domestic abuse between the appellant and victim were relevant and admissible because "[t]he challenged evidence show[ed] the chain or sequence of events which formed the history of the case, [wa]s part of the natural development of the case, and demonstrate[d a]ppellant's malice and ill-will toward the victim," as well as appellant's motive); *Commonwealth v. Drumheller*, 808 A.2d 893, 906 (Pa. 2002) (finding prior bad acts evidence of domestic abuse was admissible "to demonstrate the chain or sequence of events that formed the history of the case and [appellant's] motive, malice, intent, and ill-will").

When evidence is to be used for any such reason, it is "admissible only if the probative value of the evidence outweighs its potential for unfair

prejudice." Pa.R.E. 404(b)(2). "Unfair prejudice" is defined as "a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403 cmt.

Here, the court found that evidence of the previous assaults was properly admitted pursuant to Rule 404(b). It explained:

> [T]he court granted the Commonwealth's request to admit evidence related to [Beaulac's] two (2) previous domestic assaults against his wife in late February 2023 and around Easter 2023. During these incidents, [Beaulac] physically assaulted [Victim] following arguments. This evidence was necessary to establish [Beaulac's] motive, intent, malice or ill-will and demonstrated a pattern of abuse which had become part of the history of the case and formed part of the natural development of the facts. Thus, evidence of [Beaulac's] prior domestic assaults contributed to the complete story of the case and its probative value highly outweighed the potential for unfair prejudice.

Trial Ct. Op. at 6 (citations omitted).

The court did not abuse its discretion. The two prior incidents and the instant incident were sufficiently similar to satisfy the requirements of Pa.R.E. 404(b)(2). The three events involved Beaulac physically assaulting Victim after a verbal argument while he was intoxicated. The prior acts were not introduced to show Beaulac's propensity for violent and abusive behavior but rather to provide insight into the history of his relationship with Victim, which showed his ill-will and malice toward her as motivation for the instant crime. *See Ivy*, 146 A.3d at 252.

Further, Beaulac's suggestion that the evidence of his prior abuse of Victim was inadmissible because it was not reported or did not result in a

criminal charge against him is meritless. "If competent, evidence of prior abusive conduct, whether charged or uncharged, constitutes relevant and admissible evidence[.]" ***Commonwealth v. Chandler***, 721 A.2d 1040, 1044 n.7 (Pa. 1998); ***see also Commonwealth v. Ardinger***, 839 A.2d 1143, 1146 (Pa.Super. 2003) (stating Rule 404(b) "is not limited to evidence of crimes that have been proven beyond a reasonable doubt in court" but also encompasses "both prior crimes and prior wrongs and acts, the latter of which, by their nature, often lack definitive proof") (citation and internal quotation marks omitted). Likewise, Beaulac's argument that the court ought not to have admitted this evidence because it was "self-serving" and "uncorroborated," ***see*** Beaulac's Br. at 20, lacks merit. Such an argument goes to credibility and has no bearing on admissibility.

Moreover, as set forth above, the trial court gave the jury a cautionary instruction regarding the bad acts evidence. The court advised the jury of the limited purpose for which the evidence was introduced and that the jury could not consider the evidence as proof that Beaulac was a person of bad character or had criminal tendencies. ***See*** N.T. Trial – Volume II, 1/25/24, at 160-61; ***Commonwealth v. Dillon***, 925 A.2d 131, 141 (Pa. 2007) ("[W]hen weighing the potential for prejudice, a trial court may consider how a cautionary jury instruction might ameliorate the prejudicial effect" of Rule 404(b) evidence). "It is presumed the jury follows the court's instructions." ***Commonwealth v. Speight***, 854 A.2d 450, 458 (Pa. 2004).

Lastly, we find no abuse of discretion in the trial court's conclusion that the probative value of the evidence outweighed its prejudicial effect. A trial court is not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." *Commonwealth v. Hairston*, 84 A.3d 657, 666 (Pa. 2014) (citation omitted). Beaulac's first claim thus fails.

Beaulac next argues the evidence was insufficient to establish that he was in possession of a firearm. He asserts that the firearm was not found in his possession, not found in his home, and was not registered to him. Rather, it was found on a neighbor's porch by responding officers and was registered to Victim. Beaulac's Br. at 23-24. He maintains that a defendant's "mere presence at a place where contraband is found or secreted is insufficient, standing alone, to prove that he exercised dominion and control over those items" and "knowledge of the existence and location of the contraband is a necessary prerequisite to prove [a] defendant's intent to control, and, thus, his constructive possession." *Id.* at 22. Beaulac therefore concludes the Commonwealth did not prove that he was in possession of a firearm. *Id.* at 24.

The sufficiency of evidence is a question of law. "Our standard of review is *de novo*, and our scope of review is plenary." *Commonwealth v. Mikitiuk*, 213 A.3d 290, 300 (Pa.Super. 2019). When reviewing a challenge to the sufficiency of the evidence, "[w]e must determine whether the evidence

admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." **Commonwealth v. Feliciano**, 67 A.3d 19, 23 (Pa.Super. 2013) (*en banc*) (citation omitted). "Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail." **Id.** (citation omitted). This standard applies equally where the Commonwealth's evidence is circumstantial. **Commonwealth v. Patterson**, 180 A.3d 1217, 1229 (Pa.Super. 2018). The factfinder, "while passing on the credibility of the witnesses and the weight of the evidence[,] is free to believe all, part, or none of the evidence." **Commonwealth v. Miller**, 172 A.3d 632, 640 (Pa.Super. 2017). This Court "may not substitute our judgment for that of the factfinder." **Commonwealth v. Griffith**, 305 A.3d 573, 576 (Pa.Super. 2023).

To prove possession of a firearm by a prohibited person, the Commonwealth must show that the defendant was: (1) prohibited from possessing a firearm under Section 6105(b), and (2) possessed a firearm. **See** 18 Pa.C.S.A. § 6105(a)(1). A firearm includes any weapon that is "designed to or may be readily converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon." **Id.** at § 6105(i).

Here, the court determined that the evidence was sufficient to establish Beaulac possessed a firearm during the incident on April 22, 2023. It explained:

[Victim] testified that [Beaulac] pulled a firearm out of his waistband and threatened her by pointing it in her general vicinity. Following this altercation, [Beaulac] went outside of the residence and Ms. Hegeman testified that she was awoken by the sound of chimes on her back porch, which is where authorities later discovered the firearm in addition to other items. Authorities also observed [Beaulac] walking away from the vicinity of Ms. Hegeman's back porch when they first arrived on the scene and noted that the screen enclosing the porch had been ruptured in the area where the firearm and other items were found. Evidence also indicated [Beaulac] was one of two "major contributors" to the mixture of DNA found on the firearm. Accordingly, the evidence was sufficient to support [Beaulac's] conviction for persons not to possess, use, manufacture, control, sell or transfer firearms[.]

Trial Ct. Op. at 10.

The court did not err. Victim testified that upon returning to her home from Wawa, Beaulac restrained her and pulled out a pistol from his waistband. *See* N.T. Trial – Volume I, 1/24/24, at 57-58. She stated that he waived the pistol towards her and cocked the gun when she said she was going to call 911. *Id.* at 60-61. Victim immediately recognized that the pistol was her own gun that she stored in the couple's bedroom. *Id.* at 58. She stated that Beaulac knew where her gun was stored. *Id.* at 59. Officer Mark Dykie testified that when he arrived on the scene, he observed Beaulac walking away from Ms. Hegeman's residence towards his house. *Id.* at 151-52. He said that Beaulac appeared intoxicated. *Id.* at 153-154. Officer Dykie stated that he located the firearm on Ms. Hegeman's back porch, along with a bottle Jamison liquor and a bag with beer cans in it. *Id.* at 154-157. Victim had testified that Beaulac was drinking Jamison and beer on the night of the incident and those

were his "go-to" drinks. *Id.* at 51. Further, Beaulac's DNA was found on the firearm as one of two major contributors. Based on our review of the record, and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we find no error in the court's conclusion that the Commonwealth presented sufficient evidence that Beaulac possessed the firearm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/5/2025